**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Trustees of Ohio Bricklayers | ) | |
| Health and Welfare Fund, et al., | ) | **CASE NO. 1:17 CV 437** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| VIP Restoration, Inc., et al., | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment against Defendant Rick Semersky. (Doc. 15). The motion is unopposed. This is an ERISA case. For the reasons that follow, the motion is GRANTED.

**FACTS**

Plaintiffs are Trustees of the following funds: the Ohio Bricklayers Health and Welfare Fund, the Bricklayers and Trowel Trades International Pension Fund, the International Masonry Institute, the Bricklayers and Allied Craftworkers Local No. 55 Pension Fund, and the

1

Bricklayers and Allied Craftworkers Local No. 7 Pension Fund (together, the "Funds").

Plaintiffs bring this lawsuit against Defendants VIP Restoration, Inc. ("VIP") and its president,

Rick Semersky, Jr., alleging claims for breach of collective bargaining agreements, breach of

fiduciary duty, and violation of the Employee Retirement Income Security Act of 1974

("ERISA").

The Funds are multi-employer plans, which are maintained pursuant to collective

bargaining agreements ("CBAs") between VIP and Local Unions Nos. 5, 7, 8, 16 and 55 ("Local

Unions"). (Docs. 1 and 5 ¶¶ 3, 10). It is undisputed that the Funds are trust funds that were

established for the purpose of providing health care, pension, and related benefits for participants

and their dependents. (Docs. 1 and 5 ¶ 3; Doc. 15-6 ¶ 2).

The CBAs require VIP to pay contributions to the Funds for work done in the geographic

jurisdiction of the Local Unions. (Docs. 1 and 5 ¶¶ 12, 13). Pursuant to the CBAs, VIP also

agrees to submit timely and accurate monthly reports to the Funds with respect to all employees

performing covered work and to make contributions to the Funds. *Id.* at ¶ 14. The CBAs require

VIP to submit to audits by the Funds to determine that the contributions had been made in

accordance with the parties' agreements. *Id.* at ¶ 11. The terms of the CBAs provide that when

VIP fails to make timely contributions to the Funds, it is required to pay a penalty, including but

not limited to interest and liquidated damages. (Doc. 1-3, PageID# 116; Doc. 1-4, PageID# 137;

Doc. 1-5, PageID# 189-190; Doc. 1-7, Page ID#256-57; Doc. 1-8, PageID# 284-85).

Semersky is the president, owner, and principal officer of VIP. (Docs. 1 and 5 ¶¶ 6, 27).

He admits to being a fiduciary under ERISA. *Id.* at ¶ 6. He is the only person with authority to

sign checks at VIP, and he had the final say over which VIP bills were paid. (Doc. 15-11,

PageID# 767; Doc. 15-12, PAGEID#851).

Semersky also owned other companies, and admitted in his deposition that he used monies from the VIP bank account for the benefit of himself and his other companies. (Doc. 15-17, PAGEID#794-800). For example, VIP paid for the liquor permit for one of Semersky's restaurants. *Id.* at 799-800. VIP paid for a consultant and other individuals who did work for Semersky's other companies. *Id.* at 794, 800. VIP also paid for Semersky's Shoreby Club membership. *Id.* at 795. VIP repeatedly transferred money to Semersky's other restaurants. *Id.* at 797-98. Meanwhile, VIP did not stay current with the contributions that it owed to the Funds. (*See* Doc. 15-6 ¶ 5).

The Funds retained an auditor to review the books and records of VIP and determine whether VIP had paid contributions on all work covered by the CBAs during the period January 1, 2012 through September 30, 2016. (Doc. 15-1 ¶ 1). Larry Brown, CPA, conducted the audit. *Id.* at ¶¶ 1-2. Auditor Brown determined that VIP failed to pay contributions in a timely manner, and, therefore, accrued interest and liquidated damages. *Id.* ¶ 5. Further, VIP frequently paid contributions late. Funds Administrator Kimberly Wood and Executive Director David F. Stupar calculated the additional interest and liquidated damages associated with VIP's late payments. (Doc. 15-6; Doc. 15-15).

VIP went into receivership in September 2017. (Doc. 11-1). Documents produced by VIP demonstrate that the funds loaned to Semersky's other businesses by VIP totaled $2,436,335.20 at that time. (Doc. 15-13).

Thereafter, Plaintiffs filed this lawsuit asserting three claims for relief. Count one is a claim for breach of the CBAs between the parties. Count two is a claim for breach of fiduciary

3

duty. Count three is a claim for prohibited transactions under ERISA. When VIP went into receivership, it moved to stay the case. The Court granted that stay as to VIP only, and allowed the case to continue as to Semersky. Plaintiffs move for summary judgment with respect to Counts 2 and 3 against Semersky. Semersky is not a party to Count 1, and Plaintiffs have not moved on that Count. Semersky has not opposed the motion.

### STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts

must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted). In the event that a party does not respond to a motion for summary judgment, Federal Rule of Civil Procedure 56(e) provides that summary judgment may still be entered if the motion and supporting materials, including undisputed facts, show that the movant is entitled to it.

## ANALYSIS

### A. Count Two (Breach of Fiduciary Duty)

Plaintiffs argue that Semersky breached his fiduciary duty to the Funds. In order to establish this claim, Plaintiffs must first show that Semerksy was a fiduciary to the Funds. Semersky admitted that he was a fiduciary in his Answer to Plaintiffs' Complaint. (Docs. 1 and 5, ¶¶ 6, 38).

Further, Plaintiffs present sufficient evidence to establish that Semersky was a fiduciary. The ERISA definition of fiduciary includes any person "who exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority

or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A).

Plaintiffs present evidence that Mr. Semersky exercised discretionary authority or control over

VIP's finances. *See* Docs. 1, 5 ¶¶ 27-31 (Mr. Semersky owned VIP, had the authority to obligate

VIP, was the principal officer responsible for VIP, and made the decisions about how VIP spent

its money.). Additionally, Plaintiffs demonstrate that VIP's unpaid benefit contributions

constituted plan assets at the time they became due. Traditionally, "unpaid employer

contributions are not assets of a fund unless the agreement between the fund and the employer

specifically and clearly declares otherwise." *Road Sprinkler Fitters Local Union No. 669, U.A.,*

*AFL-CIO, et al. v. Dorn Sprinkler Co., et al.,* 2010 WL 1849341, *5 (S. D. Ohio May 4, 2010).

Plaintiffs point to three applicable trust agreements which contain language sufficient to

establish that unpaid contributions were plan assets at the time they became due:

- The Ohio Bricklayers Health & Welfare Trust Fund Restated Agreement and Declaration of Trust, Amendment No. 3: "[C]ontributions or other monies received from or owing from an Employer and/or an individual(s) who has control over the payment of such contributions shall be deemed Trust Fund Assets." (Doc. 15-9, PageID # 644-45).

- The Amended and Restated Agreement and Declaration of Trust of the Bricklayers & Trowel Trades International Pension Fund: "All moneys paid into and/or due and owing the Trust Fund, including but not limited to fringe benefits contributions due and owing to the Trust Fund, are plan assets and title to all such monies shall be vested in and remain exclusively in the Trustees of the Fund." (Doc. 15-17, PageID # 969).

- The Amended Agreement and Declaration of Trust Bricklayers Local No. 55 Health and Welfare Fund: "The Employer contributions to be paid into the Trust Fund shall not constitute or be deemed wages due to the Employees, and such contributions shall not in any manner be liable for nor subject to the debts, contracts or liabilities of the Employers, the Union or the Employees. However, contributions or other monies received from or owing from an Employer and/or an individual(s) who has control over the payment of such contributions shall be deemed Trust Fund assets." (Doc. 15-10, PageID # 740).

6

Based on the express language set forth in these agreements and the other evidence presented by Plaintiffs, the Court finds that Semersky was a fiduciary under ERISA.

As a fiduciary, Semersky had a responsibility to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, and only for the purpose of providing benefits to beneficiaries and covering administrative costs." *Briscoe v. Preferred Health Plan, Inc.,* 578 F.3d 481, 485 (6th Cir. 2009); 29 U.S.C. § 1004(a)(1)(A). Plaintiffs point to evidence that Semersky used monies from VIP to support his other businesses. (Doc. 15-11, PageID# 794-97; Doc. 15-14). In fact, the parties stipulate that VIP's business records reflect that VIP made payments to or for the benefit of other companies during the relevant time period which were not made for the benefit of VIP. (Doc. 14 ¶¶ 2-6). By the time VIP went into receivership in 2017, VIP paid to Semersky's other businesses a total of $2,436,335.20 (Doc. 15-13). Meanwhile, VIP was not paying the contributions owed to the Funds. (Doc. 15-6, ¶¶ 5-6). These actions constitute a breach of Semersky's fiduciary duty to the Funds.

Plaintiffs argue that Semersky should be held personally liable for the breach of his fiduciary duty. Under ERISA § 1109, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109; *see also Trustees of Iron Workers' Local No. 25 Pension Fund v. Mun. & Indus. Storage, Inc.,* 2011 WL 1515047, *4 (E.D. Mich. Mar. 24, 2011). This Court has found that Semersky breached his fiduciary duty to the Funds. In addition, Semersky does not oppose the motion and, therefore, concedes that he breached his fiduciary duty to the Funds. As such, the Court agrees with Plaintiffs that Semersky is

personally liable for the amount owed to the Plaintiffs.

Because Plaintiffs establish that there is no genuine issue as to any material fact that Semersky was a fiduciary to the Funds and violated his fiduciary duties therein, they are entitled to summary judgment on Count Two.

### B. Count Three (Prohibited Transactions under ERISA)

Plaintiffs argue that Semersky violated ERISA by permitting the diversion or lending of employer contributions from the Funds for the benefit of a "party in interest." Semersky admitted to this allegation in his answer to Plaintiff's complaint. (Docs. 1 and 5 ¶ 39). Moreover, Plaintiffs present sufficient evidence to support their charge. ERISA specifically prohibits certain types of transactions between plans and "parties in interest," including the "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). The term "party in interest" is defined as "any fiduciary, a person providing services to the plan, an employer whose employees are covered by the plan, and certain shareholders and relatives." *Chao v. Hall Holding Co.,* 285 F.3d 415, 424 (6th Cir. 2002); 29 U.S.C. § 1002(14)(A). VIP, an employer whose employees were covered by the Plans, and Semersky, a plan fiduciary, are both "parties in interest" under this definition.

As set forth above, there is no genuine issue of material fact that Semersky used plan assets for his own benefit by using VIP funds to support himself and his other businesses. For example, VIP paid for the liquor permit for one of Semersky's restaurants (PAGEID# 799-800), a consultant and other individuals who did work for Semersky's other companies (PAGEID# 794, 800), and Semersky's Shoreby Club membership (PAGEID# 795). These transactions are

8

prohibited under ERISA.[1]  Therefore, Plaintiffs are entitled to summary judgment against Semersky on Count Three.

### C. Damages

Plaintiffs present audit reports and calculations by the Fund Administrator to establish the amount of damages owed by Semersky.  The Sixth Circuit has affirmed awards of delinquent contributions based on auditors' reports where employers failed to offer sufficient evidence in rebuttal.  *Trs. of the Painters Union Deposit Fund v. Ybarra Constr. Co.,* 2004 WL 2334145 (6th Cir. 2004) (rejecting the use of an unsworn statement and deposition testimony to challenge an auditor's calculation of damages); *Trs. of Detroit Carpenters Health & Welfare Fund v. River City Constr. Co.,* 2004 WL 1166544 (6th Cir. 2004) ("in the absence of evidence from [defendant] demonstrating the actual hours Union employees worked, the auditor's report is sufficient proof of the contributions owed to warrant summary judgment in these amounts.").

Through the audits, Plaintiffs demonstrate that there is no genuine issue of material fact that the Ohio Bricklayers Health and Welfare Fund ("Ohio Fund") is entitled to $17,508.71, which represents the unpaid contributions through September 30, 2016, with interest, and liquidated damages calculated through December 31, 2017.  (Doc. 15-1 ¶ 5).  Additionally, the Ohio Fund is owed interest and liquidated damages on VIP's late contributions during the period April 2015 through April 2017 in the amount of $31,538.22.  (Doc. 15-6 ¶ 6).  In total, Plaintiffs

---

[1]     Plaintiffs also argue that it is undisputed that Semersky diverted plan assets for the benefit of VIP by paying VIP's other creditors without paying the Funds from 2012 to present.  However, Mr. Semersky denied this allegation in the Answer (Doc. 5, ¶ 32), and Plaintiffs have not pointed to any evidence substantiating this allegation.

show that Semersky owes the Ohio Fund <u>$49,046.93</u>, which represents unpaid fringe benefit contributions found to be due and owing through September 30, 2016, and the liquidated damages and interest found to be due and owing through December 31, 2017. (Doc. 15-1 ¶ 5).

Plaintiffs also establish that there is no genuine issue of material fact that the Bricklayers and Trowel Trades International Pension Fund and International Masonry Institute ("International Funds") are entitled to $35,634.81, which represents the amount of delinquent contributions through September 30, 2016, with interest, and liquidated damages calculated through December 31, 2017.  (Doc. 15-1 ¶ 5).  In addition, Plaintiffs show that the International Funds are entitled to an additional $31,292.93 in delinquent contributions, interest, liquidated damages and costs.  (Doc. 15-15 ¶ 20).  Plaintiffs, therefore, sufficiently establish that the International Funds are owed a total of <u>$66,927.74</u>, which represents the total unpaid fringe benefit contributions found to be doing and owing through September 30, 2017, and the liquidated damages and interest found to be due and owing through December 18, 2017.

Finally, Plaintiffs demonstrate that there is no genuine issue of material fact that the Bricklayers and Allied Craftworkers Local No. 55 Pension Fund and Bricklayers and Allied Craftworkers Local No. 55 Voluntary Employees Beneficiary Association are entitled to <u>$25,186.03</u>, which represents unpaid fringe benefit contributions found to be due and owing through December 31, 2017.  (Doc. 15-1, ¶ 5).

Plaintiffs argue that they are also entitled to attorneys' fees pursuant to the CBAs, the plan documents, and ERISA.  29 U.S.C. § 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan
> to enforce section 1145 of this title in which a judgment in favor of the plan
> is awarded, the court shall award the plan –
> (A) the unpaid contributions,

(B) interest on the unpaid contributions,
(C) an amount equal to the greater of –
      (i) interest on the unpaid contributions, or
      (ii) liquidated damages provided for under the plan in an amount
      not in excess of 20 percent . . . of the amount determined by the
      court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the
defendant, and
(E) such other legal or equitable relief as the court deems appropriate.

The Sixth Circuit has held that an award of reasonable attorneys' fees under this section is mandatory, not discretionary. *Trustees for Mich. Laborers Health Care Fund v. Eastern Concrete Paving Co.,* 1991 WL 224076 (6th Cir. Oct. 31, 1991) ("The language requires that the court 'shall award' reasonable attorney's fees when a 'judgment in favor of the plan is awarded.'"). The Court has determined that judgment shall be entered in favor of Plaintiffs and against Mr. Semersky in this case. Thus, the Court agrees that Semersky is liable to Plaintiffs for their reasonable attorneys' fees.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. 15) is GRANTED. The Court also grants Plaintiffs leave to file a properly supported motion for attorneys' fees and costs within fourteen (14) days of the date of this Order.

IT IS SO ORDERED.


       /s/ Patricia A. Gaughan
       PATRICIA A. GAUGHAN
       United States District Court
       Chief Judge
Dated: 2/16/18